

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Virginia

MACRONIX INTERNATIONAL
CO., LTD., a Taiwanese
Corporation,

v.                                    Civil Action No. 3:13cv679

SPANSION INC., a Delaware
Corporation, et al.,

       Defendants.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANTS' MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION, PURSUANT TO 28 U.S.C. § 1404(a) (Docket No. 26). For the reasons set forth below, the motion will be granted.

## BACKGROUND

Plaintiff Macronix International Co., Ltd. ("Macronix") is a Taiwan corporation with its principal place of business in Hsin-chu, Taiwan. Macronix's subsidiary has an office in Milpitas, California, where it employs engineering, management, and administrative personnel. Macronix designs and develops non-volatile memory semiconductor solutions. Presently, it

holds more than 1,700 United States patents, including the seven patents at issue in this case.

Macronix alleges that the defendants, Spansion, Inc. and Spansion LLC ("Spansion"), "have committed acts of willful patent infringement" and "sold infringing products to downstream customers" in the Eastern District of Virginia, among other locations in the United States. Spansion, Inc. is the parent company of Spansion LLC. Both are Delaware corporations with their headquarters in Sunnyvale, California. Neither Defendant has any employees or facilities in Virginia. Macronix has identified six downstream customers to whom the Defendants have sold the allegedly infringing products.

## DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Section 1404(a) imbues the district court with discretion to "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). The moving party bears the

burden of proving that the facts warrant a transfer of venue. Samsung Elec. Co. v. Rambus, Inc., 386 F. Supp. 2d 708, 715 (E.D. Va. 2005); see Cognitronics Imaging Sys., Inc. v. Recognition Research Inc., 83 F. Supp. 2d 689, 696 (E.D. Va. 2000).

When determining whether to grant a motion to transfer venue, district courts follow a two-step inquiry. First, section 1404(a) directs the court to determine whether the civil action could have been brought in the proposed forum. Jaffe v. LSI Corp., 874 F. Supp. 2d 499, 502 (E.D. Va. 2012). Second, the court considers: (1) the plaintiff's choice of forum; (2) the convenience of the witnesses; (3) access to evidence; (4) the convenience of the parties; and (5) the interest of justice. Rambus, 386 F. Supp. 2d at 716 (referring to the aforementioned factors as the "principal factors") (citing Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 633 (E.D. Va. 2003)).

It is undisputed that this action could have been brought in the Northern District of California, the proposed transferee forum. Thus, the resolution of the motion depends on whether, considering the foregoing five factors Spansion has met its burden to prove that transfer is appropriate under § 1404(a).

1.   **Plaintiff's Choice of Forum**

To begin, it is necessary to determine the level of deference to be given to Macronix's choice of forum. Generally, the "initial choice of forum, from among those possible under the law, is a privilege given to the plaintiff." Koh, 250 F. Supp. 2d at 633 (citing Medicenters of America, Inc. v. T & V Realty & Equipment Corp., 371 F. Supp. 1180, 1184 (E.D. Va. 1974)). Typically, courts accord the plaintiff's choice of forum substantial weight. "'[H]owever, if a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight.'" Rambus, 386 F. Supp. 2d at 716 (quoting Telepharmacy Solutions, Inc. v. Pickpoint Corp., 238 F. Supp. 2d 741, 743 (E.D. Va. 2003)).

The Eastern District of Virginia is not Macronix's home forum. Indeed, Macronix does not have a home forum in the United States. Macronix is incorporated in Hsin-Chu, Taiwan, and it maintains its headquarters there. Its subsidiary, Macronix America, Inc., does have an office in the United States, which is located in Milpitas, California, a suburb of San Jose.

In a patent infringement case, the nucleus of operative facts forms at or near the "center of the allegedly infringing activities," primarily where the accused products were designed,

4

developed, and manufactured. <u>Koh</u>, 250 F. Supp. 2d at 636; <u>see</u> <u>Lycos, Inc. v. TiVo, Inc.</u>, 499 F. Supp. 2d 685, 693 (E.D. Va. 2007). The record shows that Spansion's production activities took place in Austin, Texas, and that most of the relevant research and development for the product occurred in Sunnyvale, California. Neither of the locations identified by the parties implicate the Eastern District of Virginia. Thus, the "nucleus of operative facts" has little to no connection with the Eastern District of Virginia. <u>Rambus</u>, 386 F. Supp. 2d at 716.

Macronix takes the view that Spansion's sales activity in Virginia alone creates an adequate "factual nexus" to this district. But, in its complaint, Macronix identified only five Virginia customers to which Spansion sold allegedly infringing products. (Amended Compl., at ¶ 7). Further, the record shows that, since 2008, sales to those five Virginia customers represent .026% of Spansion's domestic sales. It does appear that sales to those customers have since increased slightly. But in 2012, sales to the five Virginia customers still only accounted for .037% of Spansion's domestic revenue.[1]

This level of sales activity is quite unsubstantial. And, of course, sales activity, without more, does not create a

---

[1] Macronix also identified a sixth customer in its brief opposing the Defendants' Motion to Transfer, and it believes that it may uncover more during discovery. (Pl. Brief in Opp'n, at 6-7.)

connection sufficient to justify imbuing the plaintiff's choice of forum with substantial weight.  See, e.g., Acterna, LLC v. Adtech, Inc., 129 F. Supp. 2d 936, 939 (E.D. Va. 2001); see also GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 519 (E.D. Va. 1999).  Because the Eastern District of Virginia is neither Macronix's home forum, nor the situs of operative facts, Macronix's choice of forum is not "entitled to such substantial weight" as would normally be the case.  Rambus, 386 F. Supp. 2d at 716.  Indeed, on this record, it is not appropriate to accord plaintiff's choice of forum any weight, resting, as it does, only on product sales in Virginia and a small number of sales at that.  This factor thus weighs in favor of transfer.

2.   **The Convenience of Witnesses**

The convenience of witnesses factors prominently when determining whether a transfer of venue is appropriate under Section 1404(a).  Id. at 718.  However, courts draw a distinction between party and non-party witnesses, and they afford greater weight to the convenience of non-party witnesses.  Id. (citing Koh, 250 F. Supp.2d at 637.)  Courts make this distinction because party witnesses have skin in the game: "Party witnesses are the parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum."  Id. (internal quotation marks omitted);

accord Bluestone Innovations, LLC v. LG Electronics, Inc., 940 F. Supp. 2d 310, 317 (E.D. Va. 2013).

The party asserting inconvenience to its witnesses has the burden to present "sufficient detail respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." Rambus, 386 F. Supp. 2d at 718 (citing Koh, 250 F. Supp. 2d at 636); accord Bluestone, 940 F. Supp. 2d at 317.   A court may infer, absent contrary evidence from the non-movant, that witnesses involved in, or located at the center of, the allegedly infringing activities are material. Bluestone Innovations, 940 F. Supp. 2d at 317 (citing Koh, 250 F. Supp. 2d at 636-36).

Courts assess the convenience of witness mindful that there is a substantial preference for in person testimony, particularly when "testimony is central to a claim and [] credibility is also likely to be an important issue." Bluestone, 940 F. Supp. 2d at 317-18.   However, if a party does not "demonstrate with any particularity that videotaped deposition testimony will be inadequate, and that live testimony is critical," then courts afford witness inconvenience less weight. Rambus, 386 F. Supp. 2d at 719 (emphasis added) (citing Koh, 250 F. Supp. 2d at 637; Adtech, 129 F. Supp. 2d at 939).

7

"'The moving party must demonstrate whether that witness is willing to travel to a foreign jurisdiction,'" so that the court may "'weigh[] the convenience of the witness and the necessity of compulsory process.'" Bluestone Innovations, 940 F. Supp. 2d at 317 (quoting Rambus, 386 F. Supp. 2d at 719). Finally, "[m]aking attendance more convenient or affordable for a willing witness still weighs in favor of transfer, just not as heavily." Bluestone Innovations, 940 F. Supp. 2d at 317 (citing Verizon Online Servs., Inc. v. Ralsky, 203 F. Supp. 2d 601, 623 (E.D. Va. 2002); Rambus, 386 F. Supp. 2d at 719).

Spansion has identified a number of employee-witnesses related to the development, marketing, and sale of the accused products. There is no indication that any of these employee-witnesses would be unwilling or unable to travel to Virginia to testify.

Spansion has submitted declarations from representatives of third parties, SK Hynix Inc. ("Hynix") and Winbond Electronics Corp. ("Winbond"), probable non-party witnesses who supply components for Spansion's accused products. Hynix is a Korean corporation with its principal headquarters in Korea and its United States headquarters in San Jose, California. There are no subsidiaries of Hynix registered to do business in Virginia. Winbond is a Taiwanese corporation with its principal

headquarters in Taiwan and its United States office in San Jose, California.   There are no subsidiaries of Winbond registered to do business in Virginia.

Spansion argues that, because it purchases a portion of the accused products from Hynix and Winbond, it will likely need to serve discovery on the companies to obtain documents and witnesses testimony "about the design and functionality" of the products.   Spansion further argues that documents and testimony concerning the functionality of the components supplied by Hynix and Winbond will be central to its non-infringement defenses. According to Spansion, Hynix manufactures components used for several of the accused products, specifically the accused NAND Flash Memory products.   In addition, Winbond manufactures the accused SPI Flash Memory products.   This information suggests that Hynix and Winbond employees are at or around the "center of the allegedly infringing activities," and the Court can infer that their testimony is material.   See Rambus, 386 F. Supp. 2d at 718-19.   The Complaint alleges infringement of apparatus patents, and the resolution will turn on whether the accused products contain elements identical or equivalent to the claimed elements.   Because portions of the accused products are actually produced by parties not otherwise involved in the lawsuit, the testimony of the non-party witnesses will likely be important.

The Court recognizes that there exists a "'tension in transfer motions between the duty to file such motions early in the action and the need to support that motion with affidavits identifying witnesses and the materiality of their testimony.'" Koh, 250 F. Supp. 2d at 636 (quoting Affinity Memory & Micro, Inc. v. K & Q Enter., 20 F. Supp. 2d 948, 955 n.13 (E.D. Va. 1998)). While the Court may infer that the above witnesses are material, the spare record regarding their testimony makes it difficult to determine whether video testimony would be inadequate in the event that the witnesses would not appear voluntarily. Moreover, only the representative of Hynix, Byung Kyoon Kim, has indicated that he likely would be unwilling to travel to Virginia.

Spansion also identified three prior art patents as invalidating prior art in its Answer. Of the eleven named inventors, the patents list six inventors living in California at the time. However, the patent dates are 1995, 1996, and 2009, and Spansion only submitted evidence regarding the current whereabouts of two named inventors. In addition, Spansion does not proffer evidence indicating whether these inventors would be unwilling to travel to the Eastern District of Virginia. See Bluestone, 940 F. Supp. 2d at 317.

Macronix still employs seven of the sixteen named inventors of the seven patents-in-suit.   Six currently live in or around Hsin-chu, Taiwan.   The seventh lives in Vermont.   The nine named inventors who are no longer employed by Macronix still live in Taiwan.   Macronix has represented to the court that it will make all of its employees available to testify.   It also submitted a declaration from a former employee, one of the named inventors of the patents-in-suit, Nai C. Peng, who stated therein that "there is no difference between appearing at trial in Virginia and any other state in the United States."

Because Spansion "has not established that the key witnesses will not appear if the parties so desire" or provided the necessary particularity about potential testimony, the convenience of the witnesses remains a close issue.   Rambus, 386 F. Supp. 2d at 721; Koh, 250 F. Supp.2d at 637.   The Court may presume that a trial in the Northern District of California would be more convenient for many likely witnesses, even if they are willing to travel to the Eastern District of Virginia. Generally, flights from Taiwan to San Francisco will be more convenient than flights from Taiwan to Richmond.   Further, travel between Austin, Texas and San Jose is marginally more convenient than travel between Austin and Richmond for the relevant Spansion employees located in Austin.   Therefore, the

Court finds that the convenience of witnesses weighs marginally in favor of transfer. <u>Bluestone Innovations</u>, 940 F. Supp. 2d at 317 ("Making attendance more convenient or affordable for a willing witness still weighs in favor of transfer, just not as heavily.").

## 3. Convenience of the Parties

When the plaintiff files suit outside its home district, the convenience of the parties factors more prominently in the calculus. <u>Bluestone Innovations</u>, 940 F. Supp. 2d a6 316 (citing <u>JTH Tax</u>, 482 F. Supp.2d at 738). The convenience of the parties requires the consideration of "factors such as the 'ease of access to sources of proof, the costs of obtaining witnesses, and the availability of compulsory process.'" <u>Id.</u> (quoting <u>Heinz Kettler GMGH & Co. v. Razor USA, LLC</u>, 750 F. Supp. 2d 660, 668 (E.D. Va. 2010)). At the same time, the calculus dictates that: "[a] mere shifting of the burden neither weighs in favor of retaining nor of transferring venue." <u>Koh</u>, 250 F. Supp. 2d at 639 (internal quotation marks omitted) (quoting <u>Intranexus, Inc. v. Siemens Medical Solutions Health Servs. Corp.</u>, 227 F. Supp. 2d 581, 585 (E.D. Va. 2002)).

In an action alleging patent infringement, "'the preferred forum is that which is the center of the accused activity . . . . The trier of fact ought to be as close as

possible to the milieu of the infringing device and the hub of activity centered around its production.'"   QTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 519 (E.D. Va. 1999) (quoting Santrade Ltd. V. Berndorft ICB Int'l conveyor Belts, Inc., 1992 WL 470482, *2 (D.S.C. 19992)).   The "center of activity" approach does not replace the "traditional change of venue analysis," but it provides a useful means for assessing the convenience of witnesses and accessibility of evidence, which are "well-settled precepts for applying [section] 1404(a)."  Koh, 250 F. Supp. 2d at 638.

The central issues of this case concern the "making, using, offering for sale, and/or selling within the United States, and/or importing into the United States" of allegedly infringing flash memory drives. (Compl. at ¶ 19); see QTE Wireless, 71 F. Supp. 2d at 519; see Lycos, Inc. v. TiVo, Inc., 499 F. Supp. 2d at 691 n.4.   The record shows that design, research, importation, marketing, and sales activity was centered in the Northern District of California, which "permit[s] the inference that material witnesses and documents are located in the [Northern] District of California and will be more readily accessible" in that district than this one.  Koh, 250 F. Supp. 2d at 638.

13

Spansion has identified several witnesses at the center of the accused activity in Sunnyvale, California. These witnesses are relevant to research and development, design, sales, purchases from Hynix and Winbond, and some manufacturing operations, including foundry arrangements for the accused products manufactured in Asia. (Def. Brief, Ex.1 ¶¶ 21-28; Def. Reply, Exs. K & L). Moreover, records of research and development, sales, and purchases are located at Spansion's headquarters in Sunnyvale. (Def. Brief, Ex. 1  ¶¶ 18-19, 29, 33). Some relevant manufacturing activity occurred in Austin, Texas, but other relevant manufacturing occurred in Korea, China, and Taiwan. (Def. Brief, at 11, Exs. 2 ¶ 9 & 3 ¶¶ 10-11).[2] On balance, most of the witnesses and documents at the "center of the accused activity" are found in the Northern District of California.

As noted above, only the representative of Hynix, Byung Kyoon Kim, has indicated any resistance to travelling to the

_____

[2] Further, Spansion argues, that in the past three years, it has restructured its operations. Today, the vast majority of employees specializing in research and development are in Sunnyvale, California, and there are nearly twice as many sales employees in Sunnyvale as Austin. Presumably, this means that few witnesses or documents would be located in Austin and that the Northern District of California would be the preferred forum even when compared to Austin. However, Spansion has not offered proof to support this point or explained why it is important. Thus, the point will not be considered further.

Eastern District of Virginia.    Further, neither party has
proffered any particularized testimony that could indicate
whether video testimony would be inadequate.  As a result, there
is little for the Court to consider when assessing the value of
available compulsory process for attendance at trial in the
Northern District of California relative to that here in the
chosen forum.    However, neither party has identified any
witnesses or documents in this district.    See Byserson v.
Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 633-34 (E.D. Va.
2006) (stating that the existence of potential witnesses within
the court's subpoena power militated against transfer).

Finally, transferring venue to the Northern District of
California would not merely shift the burden of inconvenience
from Spansion to Macronix.  With the exception of Shin-Yi Ho,
the record indicates that Macronix's witnesses reside in Taiwan,
which is more convenient to the Northern District of California
as measured by distance, time, and availability of air travel.
(Def. Reply, Exs. D, H, M & N) (indicating that air travel from
Taipei, Taiwan to Richmond would require two stops and take
approximately nineteen to twenty-four hours, while air travel
from Taipei, Taiwan to San Francisco could be non-stop and take
ten to fourteen hours; also indicating that air travel from
Seoul, South Korea to Richmond would require one to two stops

and take eighteen to twenty-three hours, while air travel from Seoul, South Korea to San Francisco could be non-stop and take ten to thirteen hours); see Bluestone Innovations, 940 F. Supp. 2d at 316.

On the whole, Spansion has met its "burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony" to allow the court to assess the likely testimony and the inconvenience of accessing it in the chosen forum. Koh, 250 F. Supp. 2d at 636-37. Accordingly, this factor weighs in favor of transfer to the Northern District of California.

4.   **Interests of Justice**

Section 1404(a) also directs courts to consider the "interest of justice" when determining whether to transfer venue. "The interest of justice encompasses public interest factors aimed at 'systemic integrity and fairness.'" Rambus, 386 F. Supp. 2d at 721 (quoting Stewart Org., Inc., 487 U.S. at 30). Courts assess systemic integrity and fairness by "considering docket congestion, [the] interest in having local controversies decided at home, knowledge of applicable law, [the] unfairness in burdening forum citizens with jury duty, and [the] interest in avoiding unnecessary conflicts of law." Id. at 721 n.16. Systemic integrity also accounts for a party's

"attempt to game the federal courts through forum manipulation." Id. at 721.

Several of these considerations are inapplicable to this case. The questions of applicable law and conflicts of law are inapplicable here because the claim presents questions of patent infringement, which is federal law and federal courts are presumed to possess equal expertise in matters of federal law. Bluestone Innovations, 940 F. Supp. 2d at 320. Moreover, patent disputes are not local controversies that "could be said to unfairly burden jurors in any jurisdiction." Id. Finally, Macronix's claims possess little connection with its chosen forum, and therefore do not vest this forum with a considerable interest in deciding a "local controversy." See Jaffe, 874 F. Supp. 2d at 506 (noting that "citizens in the EDVA have no special interest in this case's outcome, no manufacturing relevant to this case occurs here, and any alleged infringement through the product is not unique to the EDVA").

Also, while it is, of course, proper to consider the relative docket conditions, courts do not give those conditions "great force." Id. at 723 (citing GTE Wireless, 71 F. Supp. 2d at 520). If multiple factors favor transferring venue, then the mere fact that the plaintiff could obtain a trial and judgment sooner in the plaintiff's chosen venue than in another does not

preclude transfer.  Id.  It is likely true that Macronix will obtain a trial and judgment sooner in the Eastern District of Virginia than in the Northern District of California, but this is only "a minor consideration" when "other reasonable and logical factors" favor transfer.  GTE Wireless, 71 F. Supp. 2d at 520; see Lycos, 499 F. Supp. 2d at 696.

Courts frequently invoke the "interests of justice" when there are ongoing, related actions in different district courts. See Rambus, 386 F. Supp. 2d at 721; Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3854 at 441 (discussing the goal of avoiding "multiplicity of litigation from a single transaction"); see Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").  In this case, the Court takes notice of the fact that Spansion filed a complaint against Macronix in the Northern District of California on August 1, 2013.  See Spansion LLC v. Macronix Int'l Co., No. 13-cv-03566 (N.D. Cal. Aug. 1, 2013). That proceeding is currently stayed during the pendency of a concurrent U.S. International Trade Commission investigation in

which Spansion is the complainant and Macronix is the respondent.

Finally, granting transfer would not permit a party to successfully manipulate forum criteria.  Macronix argues that Spansion should be precluded from asserting that the Eastern District of Virginia is inconvenient because it has previously availed itself of the Eastern District of Virginia in an unrelated suit, and opposed transfer of that case to the Northern District of California.  Conversely, Spansion points out that Macronix previously sought a transfer to the Northern District of California when it was sued in this District.  With regards to its forum preference, Spansion has argued that its circumstances have changed, but it has not proved that argument. And, its efforts to distinguish its previous case from this strongly suggest that Spansion's plea for a change of venue in this case is manipulative and is interposed to secure a delay that likely will ensue because of the congested docket in the Northern District of California.  That, of course, conceptually could tip the balance of factors.  But, it does not do so here because:  (i) the only connection between this case and this district is a very small number of sales of the allegedly infringing product; and (ii) when the case does go to trial, the jury will be able to hear in person testimony from important

19

witnesses; and (iii) discovery will be more easily managed and controlled in the Northern District of California.

### CONCLUSION

For the foregoing reasons, the DEFENDANTS' MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION, PURSUANT TO 28 U.S.C. § 1404(a) (Docket No. 26) is granted and the case will be transferred to the United States District Court for the Northern District of California.[3]

It is so ORDERED.


_____/s/_____ _REP___

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date:  March 10, 2014

---

[3] Because, by separate Memorandum Opinion and Order, the Court has required the plaintiff to file a Second Amended Complaint, the transfer will occur after the filing of the Second Amended Complaint and the Answer.